Thy B. Bui (SBN 256383)
tbui@constangy.com
Lisa Yumi Mitchell (SBN 311407)
lmitchell@constangy.com
CONSTANGY, BROOKS, SMITH & PROPHETE, LLP
2029 Century Park East, Suite 1100
Los Angeles, CA 90067
310.909.7775
424.465.6630

Attorneys for Defendants
LIBERTY MUTUAL INSURANCE COMPANY
and SARAH CISCEL

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| ANN CARRUTHERS,<br><br>                    Plaintiff,<br><br>     vs.<br><br>LIBERTY MUTUAL INSURANCE COMPANY INC., a Massachusetts corporation; SARAH CISCEL, an individual; and DOES 1-20, inclusive<br><br>                    Defendants. | Case No.  8:18-cv-01264<br><br>*[Removed from Orange County Superior Court*<br>*Case No. 30-2017-00942692-CU-WT-NJC]*<br><br>NOTICE OF REMOVAL<br><br>[DIVERSITY-28 U.S.C. §§ 1332, 1367, 1441]<br><br>Action Filed:      September 11, 2017<br>Removal Date:    July 20, 2018 |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, AND TO PLAINTIFF ANN CARRUTHERS AND HER ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Defendant Liberty Mutual Insurance Company and Defendant Sarah Ciscel[1] hereby remove this action from the Superior Court of California, County of Orange, to the United States District Court for the Central District of California—Southern Division.

This Court has original jurisdiction over this action under 28 U.S.C. § 1332 because complete diversity of citizenship exists and the amount in controversy exceeds $75,000, exclusive of interest and costs. Accordingly, this action is removable under 28 U.S.C. §§ 1441 and 1446. The following is a short and plain statement of the grounds for removal pursuant to 28 U.S.C. § 1446(a)-(c).

PROCEDURAL BACKGROUND

1. This case arises from Liberty Mutual's withdrawal of a contingent employment offer to Plaintiff Ann Carruthers. On September 11, 2017, Plaintiff filed this action in the Superior Court of the State of California, County of Orange ("State Court"), Case No. 30-2017-00942692-CU-WT-NJC (the "State Court Action").

2. On September 11, 2017, Plaintiff filed her Complaint against Liberty Mutual, a Massachusetts stock insurance company, and Sarah Ciscel, an individual residing in California, in State Court. As to Liberty Mutual, Plaintiff's Complaint alleged causes of action for (1) breach of implied contract and (2) defamation by ratification and adoption. As to Ms. Ciscel, the Complaint alleged causes of action for: (1) intentional interference with existing contractual relations; (2) intentional

---

[1] On June 22, 2018, the State Court entered an order sustaining demurrer without leave to amend (hereinafter "Order Sustaining Demurrer Without Leave to Amend") as to all of Plaintiff's causes of action against Ms. Ciscel. To the extent this Court considers her a defendant in this action, Ms. Ciscel joins in this Notice of Removal. Her citizenship, however, should be disregarded for diversity purposes as she was fraudulently joined to this action for the reasons set forth below.

1

NOTICE OF REMOVAL

interference with prospective economic advantage; and (3) defamation per se.  A true and correct copy of Plaintiff's Complaint is attached hereto as **Exhibit 1**.

3.     On September 28, 2017, Plaintiff filed her First Amended Complaint ("FAC").  As to Liberty Mutual, Plaintiff**'s** FAC alleged causes of action for: (1) breach of implied contract; (2) defamation by ratification and adoption; (3) violation of the California Investigative Consumer Reporting Agencies Act; (4) wrongful termination in violation of Labor Code section 1102.5; (5) invasion of the California constitutional right to privacy of autonomy in personnel decisions and activities; and (6) invasion of the California constitutional right to informational privacy.  As to Ms. Ciscel, the FAC alleged causes of action for: (1) intentional interference with existing contractual relations; (2) intentional interference with prospective economic advantage; and (3) defamation per se.  A true and correct copy of Plaintiff's FAC is attached hereto as **Exhibit 2**.

4.     On December 20, 2017, Liberty Mutual and Ms. Ciscel responded to Plaintiff's FAC by filing a demurrer to Plaintiff's causes of action for: (1) breach of implied contract; (2) intentional interference with existing contractual relations; (3) intentional interference with prospective economic advantage; (4) defamation per se, (5) defamation by ratification and adoption; and (6) wrongful termination in violation of Labor Code section 1102.5.  A true and correct copy of Defendants' demurrer to Plaintiff's FAC is attached hereto as **Exhibit 3**.

5.     The State Court held a hearing on Defendants' demurrer to Plaintiff's FAC on February 26, 2018.  On March 21, 2018, the State Court issued an Order sustaining Defendants' demurrer in its entirety.  The Court further granted Plaintiff fifteen days' leave to file a second amended complaint.  A true and correct copy of the State Court's Order sustaining Defendants' demurrer to Plaintiff's FAC is attached hereto as **Exhibit 4**.

6.     On April 5, 2018, Plaintiff filed her Second Amended Complaint ("SAC").  As to Liberty Mutual, Plaintiff's SAC alleged causes of action for: (1)

breach of implied contract; (2) defamation by ratification and adoption; (3) violation of the California Investigative Consumer Reporting Agencies Act; (4) wrongful termination in violation of Labor Code section 1102.5; (5) invasion of the California constitutional right to privacy of autonomy in personnel decisions and activities; and (6) invasion of the California constitutional right to informational privacy.  As to Ms. Ciscel, the SAC alleged causes of action for: (1) intentional interference with existing contractual relations; (2) intentional interference with prospective economic advantage; and (3) defamation per se.  A true and correct copy of Plaintiff's SAC is attached hereto as **Exhibit 5**.

7.      On May 8, 2018, Liberty Mutual and Ms. Ciscel responded to Plaintiff's SAC by again filing a demurrer to Plaintiff's causes of action for: (1) breach of implied contract; (2) intentional interference with existing contractual relations; (3) intentional interference with prospective economic advantage; (4) defamation per se, (5) defamation by ratification and adoption; and (6) wrongful termination in violation of Labor Code section 1102.5.  A true and correct copy of Defendants' demurrer to Plaintiff's SAC is attached hereto as **Exhibit 6**.

8.      The State Court held a hearing on Defendants' demurrer to Plaintiff's SAC on June 11, 2018.  On June 26, 2018, the State Court electronically served an Order sustaining the Defendants' demurrer *without leave to amend* as to Plaintiff's causes of action for: (1) intentional interference with existing contractual relations; (2) intentional interference with prospective economic advantage; (3) defamation per se, (4) defamation by ratification and adoption; and (5) wrongful termination in violation of Labor Code section 1102.5.  A true and correct copy of the State Court's Order Sustaining Demurrer Without Leave to Amend to Plaintiff's SAC is attached hereto as **Exhibit 7**.

9.      Following the Superior Court's entry of its Order Sustaining Demurrer Without Leave to Amend to Plaintiff's SAC, only four causes of action in Plaintiff's SAC remain: (1) breach of implied contract; (2) violation of the California

3

Investigative Consumer Reporting Agencies Act, (3) invasion of the California constitutional right to privacy of autonomy in personnel decisions and activities; and (4) invasion of the California constitutional right to informational privacy. Each of these remaining causes of action are alleged against Liberty Mutual only and none are alleged against Ms. Ciscel. The State Court's Order Sustaining Demurrer Without Leave to Amend therefore conclusively establishes that Plaintiff fraudulently joined Ms. Ciscel to this Action, as Plaintiff stated no colorable causes of action against her and the State Court has denied leave to amend. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). Accordingly, her citizenship is disregarded for diversity purposes. *Id.*

10. On July 6, 2018, Liberty Mutual filed its Answer to the four remaining causes of action in Plaintiff's SAC. Ms. Ciscel did not answer, as the State Court sustained demurrer without leave to amend as to all of the causes of action alleged against her.

11. Defendants "DOES 1 through 20, inclusive" have not been identified, nor is there any record of their having been served with the Summons or the Complaint in the State Court Action.

## TIMELINESS OF REMOVAL

12. The removability of this case was first ascertainable on June 26, 2018, which was when the State Court electronically served the Parties with its June 22, 2018 Order. The Order Sustaining Demurrer *Without Leave To Amend* dismissed all of Plaintiff's causes of action against Ms. Ciscel, who is the only defendant that is a citizen of California.

13. Thus, removal is timely filed as required by 28 U.S.C. 1446(b) because it was accomplished within 30 days of Liberty Mutual's receipt of the State Court's Order Sustaining Demurrer Without Leave to Amend on June 26, 2018 and within one year of the filing of Plaintiff's initial Complaint on September 11, 2017.

//

4

NOTICE OF REMOVAL

**DIVERSITY JURISDICTION**

14.    **Basis of Original Jurisdiction.**  Liberty Mutual is entitled to remove the State Court Action on the ground that this Court has original jurisdiction pursuant to 28 U.S.C. § 1332.  This is an action which may be removed to this Court pursuant to the provisions of 28 U.S.C. § 1441(b) because: (1) it is a civil action between citizens of different states, as Plaintiff is a citizen of California and Liberty Mutual is a citizen of Massachusetts, and (2) it involves an amount in controversy that exceeds the sum of $75,000, exclusive of interests and costs as described below.

15.    **Plaintiff's Citizenship**.  For diversity purposes, an individual's citizenship is determined by the individual's domicile.  *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  A person's domicile is her permanent home, where she resides with the intent to remain or to which she intends to return.  *See Lew v. Moss,* 797 F.2d 747, 749 (9th Cir. 1986).  Plaintiff is, and was at the time she filed her initial Complaint on September 11, 2017, a resident of the State of California.  Compl. ¶ 2.  Plaintiff likewise continued to allege that she resides in Orange County, California in her SAC, which she filed on April 5, 2018.  SAC ¶ 2.  Exhibits E and F to Plaintiff's SAC also identify Plaintiff's home address as being located in Newport Beach, California.  SAC, Exs. E–F.  Further, Plaintiff filed a complaint with the California Department of Fair Employment and Housing on June 8, 2017, DFEH No. 898326-294649.  In that complaint, Plaintiff declares under penalty of perjury that she resides in the State of California.  A true and correct copy of Plaintiff's verified complaint is attached hereto as **Exhibit 8**.

16.    Accordingly, Plaintiff's domicile is in California and she is a citizen of California.

17.    **Liberty Mutual's Citizenship.**  The citizenship of a corporation is both the state of its incorporation and the state of its principal place of business.  28 U.S.C. § 1332(c)(1).  When determining a corporation's principal place of business for purposes of diversity jurisdiction, courts refer to the place where a corporation's

5
NOTICE OF REMOVAL

officers direct, control, and coordinate the corporation's activities. *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010).  The principal place of business is where the corporation "maintains its headquarters—provided that the headquarters is the actual center of direction, control and coordination." *Id.*

18.    Liberty Mutual is incorporated in Massachusetts, and its principal place of business is in Boston, Massachusetts, where the company performs the vast majority of its executive and administrative functions at its corporate headquarters in that location.  Attached hereto as **Exhibit 9** is a true and correct copy of Liberty Mutual's Statement of Information filed with the California Secretary of State on August 23, 2016 which was obtained from the California Secretary of State's website at www.sos.ca.gov.  Liberty Mutual's Statement of Information identifies Boston, Massachusetts as the location of its principal executive offices.  Attached hereto as **Exhibit 10** is a true and correct copy of Liberty Mutual's most recent Statement of Information filed with the California Secretary of State on August 25, 2017, which was obtained from the California Secretary of State's website at www.sos.ca.gov.  It states that there is no change from the Statement of Information that Liberty Mutual last filed on August 23, 2016.  Attached hereto as **Exhibit 11** is a true and correct copy of Liberty Mutual's Business Entity Summary, which was obtained from the Secretary of the Commonwealth of Massachusetts' website at www.sec.state.ma.us.  The Business Entity Summary states that Liberty Mutual was organized in Massachusetts on January 1, 1912.

19.    **Ms. Ciscel's Citizenship**.  As set forth in Paragraph 9 above, Ms. Ciscel's citizenship should be disregarded for diversity purposes as she was fraudulently joined to this action.  Ex. 7; *Morris*, 236 F.3d at 1067.  The State Court's Order Sustaining Demurrer Without Leave to Amend conclusively establishes that Plaintiff stated no colorable causes of action against Ms. Ciscel in her Complaint, FAC, or SAC.

20.    **Amount in Controversy**.  Based on Plaintiff's claims for damages and

6

NOTICE OF REMOVAL

her pre-litigation demand letter, it is apparent that the amount in controversy in this action exceeds the jurisdiction minimum of $75,000.  "The calculation of the amount in controversy takes into account claims for 'general' damages,' 'special' damages, punitive damages if recoverable as a matter of law."  *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 984 (S.D. Cal. 2005).  *See also*, *e.g.*, *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (factual allegations in the complaint, along with the types of damages plaintiff sought made it facially apparent that the amount in controversy exceeded the $75,000 jurisdictional amount).

21.   In the SAC, Plaintiff claims that Liberty Mutual breached an implied contract of employment, pursuant to which she would have been paid an annual salary of $125,000.  SAC ¶¶ 8, 15, 19, 22–24. *See also* FAC, Ex. A; Compl. ¶¶ 7–12.  Plaintiff further asserts that she was damaged by Liberty Mutual's alleged breach in the amount of "her expected income and benefits of employment," and that she "continues to incur economic losses post-mitigation in substantial sums." SAC ¶ 24.  The SAC does not articulate the amount of damages sought by Plaintiff.

22.   When damages are not clearly specified in the pleadings, courts may rely upon a variety of documents to determine their value, including written settlement demands.  *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 839–40 (9th Cir. 2002); *Arellano v. Home Depot U.S.A., Inc.*, 245 F. Supp. 2d 1102, 1108 (S.D. Cal. 2003). A true and correct copy of a pre-litigation demand letter dated May 31, 2017, sent on behalf of Plaintiff by her counsel to Liberty Mutual, is attached hereto as **Exhibit 12**.  As set forth in Plaintiff's May 31, 2017 demand letter, she claims compensatory damages in the amount of $24,029 "in wages and benefits alone" which she claims she lost during her "10 weeks of unemployment" following Liberty Mutual's alleged breach of contract.  Ex. 12 at 11.

23.   Aside from her lost wages of $24,029, Plaintiff claims other, unspecified damages for "incidental economic losses, whether by loss of credit rating, loss of

7

savings, retirement, and associated investments" allegedly caused by Liberty Mutual's breach of contract.  SAC at Prayer for Relief (40:13–15).

24.    In addition to these two categories of contract-based damages, Plaintiff seeks to recover unspecified sums for the following from Liberty Mutual:

a.    "[E]motional injury and distress Plaintiff has incurred and will incur because of" Liberty Mutual's alleged "failure to comply with the…California Investigative Consumer Reporting Agencies Act…" SAC at Prayer for Relief (43:12-15).  Although not expressly requested in the SAC, if Plaintiff prevails on this claim she will be entitled to *the greater of* her actual damages or statutory damages of $10,000.  Cal. Civ. Code § 1786.50(a)(1).

b.    "[C]osts of the action" and "reasonable attorneys' fees…" pursuant to Civil Code section 1786.50(a)(2).  SAC at Prayer for Relief (43:16–17).

c.    "[P]unitive damages pursuant to Civil Code section 1786.50[(b)]..." SAC at Prayer for Relief (43:18).

d.    Emotional distress and punitive damages (pursuant to Civil Code section 3294) arising from her two, separate, tort-based invasion of privacy claims. SAC at Prayer for Relief (44:15–17 and 45:1–3).

25.    Regarding the latter two claims, Plaintiff asserts that Liberty Mutual invaded her privacy by examining, intruding into, and unduly influencing her marital status and relationship, including the eventual dissolution of her marriage, and thereafter disseminating and misusing sensitive, personal, and confidential information pertaining thereto.  SAC ¶¶ 124–128, 134–141.  However, the SAC is silent as to the value of the damages she attributes to these claims.

26.    Nevertheless, and as a consequence of Liberty Mutual's alleged violations of Plaintiff's privacy, she claims to have suffered "emotional damage [which] was severe and will be long lasting." Ex. 13 at 11.  In fact, Plaintiff asserts that "[t]his is a case where compensation for emotional damages must be given great consideration" because when she "first received the [Liberty Mutual] job offer

8

she was at a high point in her life." *Id*. at 11–12.  However, Plaintiff claims that after Liberty Mutual learned about her private affairs it rescinded the offer which "destroyed her world" because "[s]he was being accused of something that she knew she did not do; and continued to be accused of wrongdoing…" such that "[s]he then fell into a constant state of worry, panic, and anxiety…" *Id*. at 12. Consequently, Plaintiff contends that she "lost an unhealthy amount of weight, continues to have trouble sleeping, and found herself isolated from friends, family, and the outside world.  To this day, she still claims to suffer from increased stress related to the unfounded accusations, feels embarrassed and ashamed" and "felt helpless…" *Id*.  Moreover, Plaintiff alleges that she avoids Liberty Mutual employees and her friends in the insurance industry, because she is "in fear that they will gossip" and concerned that "such gossip will reach her new employer and cause even greater harm…This creates even greater emotional stress, as each run-in from someone in her past could jeopardize her current employment." *Id*.  And, while Plaintiff acknowledges that the "great emotional, physical, and social loss [allegedly] caused by Liberty Mutual's wrongdoing may be difficult to…value…the loss is undoubtedly greater than her lost income…" of $24,029. *Id*.  (emphasis added).

27.    Plaintiff therefore seeks to recover the following from Liberty Mutual:

e.    A minimum of $24,029 in economic damages to compensate for Liberty Mutual's alleged breach of an implied contract;

f.    An unspecified amount to compensate Plaintiff for allegedly ongoing "incidental economic losses" resulting from the same alleged breach;

g.    An unspecified amount—totaling *no less than* the statutory minimum of $10,000—to compensate her for Liberty Mutual's alleged violation of the California Investigative Consumer Reporting Agencies Act;

h.    A sum "greater than" $24,029 to compensate her for the emotional injuries she claims arise from Liberty Mutual's alleged invasion of her

9

privacy;

        i.    Punitive damages in an unspecified sum; and

        j.    Attorneys' fees, which, on information and belief, presently exceed $20,000 and continue to accrue.

28.   Taken together, Plaintiff's alleged economic damages and non-economic damages, the punitive damages she seeks, and her attorneys' fees satisfy the amount-in-controversy requirement. *See Kroske,* 432 F.3d at 980 (affirming removal of bank employee lawsuit, even though employee earned less than $75,000 per year, because emotional distress damages could reasonably be assumed to add enough to her lost wages to exceed the jurisdictional amount); *White v. FCI USA, Inc.,* 319 F.3d 672, 675–76 (5th Cir. 2003) (holding that plaintiff's wrongful termination claim exceeds $75,000 based on her "lengthy list" of various categories of damages); *Simmons v. PCR Tech.,* 209 F. Supp. 2d 1029, 1034 (N.D. Cal. 2002) (holding that plaintiff's employment discrimination claim exceeds the federal jurisdictional minimum, even though the lost wages at the time of removal were just $26,500, because Plaintiff sought emotional distress damages, punitive damages, and attorney's fees). Accordingly, the amount in controversy in this action exceeds the jurisdictional minimum of $75,000.

## CONCLUSION

29.   Complete diversity of citizenship exists inasmuch as Plaintiff is a citizen of California and Liberty Mutual is a citizen of Massachusetts. Ms. Ciscel's citizenship is disregarded for diversity purposes as she was fraudulently joined. Furthermore, the amount in controversy exceeds $75,000. Accordingly, this Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. §§1332, 1441, and 1446, and Liberty Mutual has properly removed the State Court Action to this Court.

//

//

WHEREFORE, Liberty Mutual prays that the State Court Action be removed from the Superior Court of California, County of Orange, to this Court.

Dated: July 20, 2018          CONSTANGY, BROOKS, SMITH & PROPHETE LLP


By:   /s Thy B. Bui                              _____
         Thy B. Bui
         Lisa Yumi Mitchell
         Attorneys for Defendants
         LIBERTY MUTUAL INSURANCE COMPANY
         and SARAH CISCEL

11
NOTICE OF REMOVAL